IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT
OF VIRGINIA
Alexandria Division

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br>v.<br><br>ZILLOW GROUP, INC., *et al.*,<br><br>Defendants. | Case No. 1:25-cv-1638-AJT-WBP |
| COMMONWEALTH OF VIRGINIA, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>ZILLOW GROUP, INC., *et al.*,<br><br>Defendants. | Case No. 1:25-cv-1647-AJT-WBP |

## ORDER

In this antitrust action, the Federal Trade Commission ("FTC") and several state attorneys general allege that a partnership agreement between Defendants Zillow Group and Redfin Corporation to syndicate multifamily rental housing postings and leads on their "Internet Listing Services" ("ILS") platforms constitutes an unlawful agreement in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (Count I), an unlawful acquisition in Violation of Section 7 of the Clayton Act, 15 U.S.C. § 18 (Count II), and unlawful method of

1

competition in violation of Section 5 of the FTC Act, 15 U.S.C. § 45 (Count III).[1] Before the

Court is Defendants' Joint Motion to Dismiss, [Doc. No. 62] (the "Motion"). The Court held a

hearing on the Motion on February 25, 2026, following which it took the Motion under

advisement. Upon consideration of the Motion, the memoranda in support thereof and in

opposition thereto, the argument of counsel at the hearing, and for the reasons stated herein, the

Motion is **DENIED**.

Central to Plaintiffs' claim is an alleged $100 million payment from Zillow, one of the

alleged dominant players in the ILS rental listing business,[2] to Redfin, an alleged aggressive

competitor,[3] in exchange for Redfin to "stop competing for the sale of multifamily rental

advertising[,]" and that the parties' agreement "restrained competition between the companies in

multiple ways." [Compl.] ¶ 6. In that regard, Plaintiffs allege that in exchange for the one-time

$100 Million fee and a capped monthly flat fee, Redfin will source the multifamily rental

advertisements on its ILS platform exclusively from Zillow (*i.e.,* stop competing for new

listings) for a period of nine years (*Id.* ¶¶ 7, 86); that it has or will effectively transfer to Zillow

the vast majority of its existing multifamily ILS advertising contracts and a significant portion of

its multifamily salesforce (*Id.* ¶¶ 8, 47-48); and that it has shared with Zillow and will continue

to share throughout the nine-year period key customer information including "leads" from

interested renters generated through its platform, based on a compensation structure that does not

meaningfully incentivize it to compete to generate more or better leads (*Id.* ¶¶ 46, 48-50).

---

[1] Count III is brought only by the FTC.

[2] Plaintiffs allege that Zillow and Redfin are two of the three "clear market leaders in terms of rental ILS traffic since at least the start of 2021" ([Doc. No. 9] ¶ 28; (the "Complaint")); and that "Zillow claims to be the number #1 most- visited rentals network and the most searched  rentals marketplace, touting its ability to help advertisers reach more high-intent renters. In May 2024, Zillow estimated that it had 'more than 50% of all rental listings – more than any other site[.]'" *Id.* ¶ 3.

[3] *See* [Compl.] ¶¶ 4, 5, 32 (detailing Redfin's rise within the rental market from 2021, when it purchased RentPath, "a key competitor in the ILS advertising market," to its partnership with Zillow).

In response to what appears from the face of the Complaint to be clearly anti-competitive conduct, Defendants seek to dismiss the Complaint on a variety of grounds, including that (1) because this case concerns a two-sided advertising platform exhibiting strong indirect "network effects" (meaning that the participation of both the renters and sellers benefits one another), Plaintiffs have failed properly to allege a market encompassing both sides; (2) Plaintiffs' geographic market definition (of a single, national market for ILS platforms) is not cognizable as housing markets are functionally local; and (3) Plaintiffs fail to allege that Zillow and Redfin have sufficient market power to harm competition.

While recognizing that ILS involves a two-sided marketplace, Plaintiffs contend that the Zillow-Redfin partnership is nevertheless likely to "reduce Redfin's ability and incentive to compete for renters, including through investment and innovation to attract visitors and improve user experience" ([Opp.] at 22–25), and that the procompetitive justification for anti-competitive conduct relied on by Defendants applies only to *transactional* two-sided platforms in which the platform owner "cannot make a sale to one side of the platform without simultaneously making a sale to the other." *Compare Ohio v. American Express*, 585 U.S. 529, 535–36 (2018) (Analyzing both sides of a two-sided market for credit card transactions) *with US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 57 (2d Cir. 2019) (Holding that only "[i]n cases involving two-sided *transaction* platforms…[must] the relevant market…include both sides of the platform.") (emphasis in original).

In order to state a claim under the applicable "quick look" framework of review,[4] an antitrust plaintiff need only allege facts showing a form of market injury. *See California Dental*

---

[4] Defendants contend that the partnership's impact on competition is sufficiently uncertain that the Court should apply the more stringent "rule of reason" framework; however, it is clear that this case is one in which "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question

*Ass'n*, 526 U.S. at 781 ("looking to the circumstances, details, and logic of a restraint… [t]he object is to see whether the experience of the market has been so clear, or necessarily will be, that a confident conclusion about the principal tendency of a restriction will follow from a quick (or at least quicker) look"). Here, Defendants centrally claim that defects in the Complaint's market definition and market power-related allegations require dismissal; however, given the fact-intensive nature of these claims, much of which involve factual assertions and considerations outside of the Complaint itself, and the Court's obligation at this procedural stage to consider the allegations of the Complaint in the light most favorable to the Plaintiffs, with all reasonable inferences drawn in their favor, the Plaintiffs have alleged facts that make plausible their claims under the Sherman Act (Count I), the Clayton Act (Count II), and the FTC Act (Count III). Accordingly, it is hereby

ORDERED that the Motion be, and the same hereby is, **DENIED**.

The Clerk is directed to forward copies of this order to all counsel of record.

_____
Anthony J. Trenga
Senior U.S. District Judge

May 6, 2026
Alexandria, Virginia

---

have an anticompetitive effect on customers and markets," such that quick look is the appropriate framework. *See California Dental Ass'n v. F.T.C.*, 526 U.S. 756, 757 (1999).

4