**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>*Plaintiff*,<br><br>v.<br><br>**ZILLOW GROUP, INC., ZILLOW, INC., and REDFIN CORPORATION,**<br><br>*Defendants*. | Case No. 1:25-cv-1638 (AJT-WBP) |
| **COMMONWEALTH OF VIRGINIA, STATE OF ARIZONA, STATE OF CONNECTICUT, STATE OF NEW YORK, and STATE OF WASHINGTON,**<br><br>*Plaintiffs*,<br><br>v.<br><br>**ZILLOW GROUP, INC., ZILLOW, INC., and REDFIN CORPORATION,**<br><br>*Defendants*. | **PUBLIC REDACTED**<br><br><br>Case No. 1:25-cv-1647 (AJT-WBP) |

<u>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE CERTAIN OF DR. GOWRISANKARAN'S REGRESSION ANALYSES**</u>

Dr. Gautam Gowrisankaran, Defendants' economic expert, concludes that ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ To reach these conclusions, he relies on

regression analyses, finding that,  However, Dr. Gowrisankaran's regression

analyses are fundamentally flawed and thus cannot be relied upon to support these conclusions.

These regressions ████████████████ ignoring the market reality that prices routinely

are not set at the MSA level. More critically, Dr. Gowrisankaran's discussion of his regressions

conflates correlation and causation. Regression analyses of the kind put forward by Dr.

Gowrisankaran cannot establish a causal relationship between a change in shares and a change in

price. As such, they are unreliable and do not help the trier of fact. They should be excluded

from this trial.[2]

## FACTUAL BACKGROUND

Defendants retained Dr. Gowrisankaran to serve as an economic expert providing

opinions on the competitive effects of the Agreements between Zillow and Redfin.

Gowrisankaran Report ¶¶ 8–9. On April 8, 2026, Defendants submitted a report

("Gowrisankaran Report," excerpts attached as Exhibit 1) containing Dr. Gowrisankaran's

analyses. On May 18, 2026, following the close of discovery and without leave of the Court,

---

[1] An MSA is a geographic area associated with at least one urban area with a population of 50,000 or more, plus adjacent areas that share a high degree of social and economic integration. U.S. Census Bureau, Geography Program Glossary, https://www.census.gov/programs-surveys/geography/about/glossary.html#par_textimage_7. For example, the Washington, D.C., metropolitan area, including Washington, Arlington, and Alexandria, is an MSA.

[2] Plaintiffs move to exclude all of the regression analyses that Dr. Gowrisankaran relies on to support his conclusions that, pre-Agreements, ████████████████████████ ██████████████████████████████████ As to the first conclusion, Dr. Gowrisankaran relies on the regressions described at ¶¶ 217 and 218 of his Report, Exhibit 24 of his Report, and Appendix B.2, Exhibits 72–75 to his Report. As to the second conclusion, Dr. Gowrisankaran relies on the regressions described at ¶¶ 278 and 279 of his Report, Exhibit 31 of his Report, and Appendix B.3, Exhibits 77–80 to his Report.

Defendants submitted a surreply report also authored by Dr. Gowrisankaran. On May 21, 2026, Plaintiffs deposed Dr. Gowrisankaran ("Gowrisankaran Dep.," attached as Exhibit 2).

In his initial report, Dr. Gowrisankaran presents two sets of regression analyses. *See* Gowrisankaran Report ¶¶ 217, 218, 278, 279. In its simplest form, regression analysis is a statistical tool that measures the tendency of two variables to move together. Economists describe such an analysis as regressing a dependent variable "on" an independent variable.[3] Dr. Gowrisankaran purports to make two showings based on his regressions.

First, Dr. Gowrisankaran purports to show that  Gowrisankaran Report ¶ 215. He reaches this conclusion by regressing ████████████████████████████████████ ████████████████████████████████ Gowrisankaran Report ¶ 217. Dr. Gowrisankaran asserts that his regression analyses of ██████████████████████████ can be used to test Dr. Verlinda's conclusion that Redfin constrained Zillow pre-Agreements, explaining that ██ ████████████████████████████████████ ████████████████████████████████████ ████████████████████ Gowrisankaran Report ¶ 217.

---

[3] *See* JEFFREY M. WOOLDRIDGE, INTRODUCTORY ECONOMETRICS: A MODERN APPROACH 31 (7th ed. 2020) (attached as Exhibit 3) ("We will often […] say[] that we *run the regression of y on x*, or simply that we *regress y on x*.") (emphasis in original).

[4] ████████████████████████████████████████ ████████████████████████ Gowrisankaran Report ¶ 217 n. 345. Because many multifamily rental properties list on multiple ILSs, and some multifamily rental properties do not use ILSs, the penetration rates of ILSs in a given MSA do not sum to 100%. *See* Expert Report of Dr. Jeremy A. Verlinda, Mar. 9, 2026 ("Verlinda Report," excerpts attached as Exhibit 4) ¶ 173. Indeed, at the national level, penetration rates of ILSs sum to greater than 100%. *See* Verlinda Report Table 8.

Second, Dr. Gowrisankaran claims that the

Gowrisankaran Report ¶ 280. He reaches this conclusion by

Gowrisankaran Report ¶ 278.

For Dr. Gowrisankaran's analyses to support these conclusions, they must elucidate a causal connection between ████████████████████████████████ mere correlation does not suffice. But Dr. Gowrisankaran's regressions cannot identify a causal relationship. While regressions measure correlation among variables, they do not by themselves establish a causal relationship.[5] That is, regressions do not establish that a change in one variable (e.g., penetration rates) *causes* a change in another variable (e.g., prices). In particular, when both variables are affected by common factors (or are determined through a common process) that are omitted from the analysis, simple regression techniques like the ones employed by Dr. Gowrisankaran cannot reliably identify a causal relationship—a shortcoming known as an endogeneity problem.

Dr. Gowrisankaran himself equivocated as to whether his regressions established causal relationships. For instance, as to one of his regressions ████████████████████ Dr. Gowrisankaran testified that he ████████████████████████ Gowrisankaran Dep. 302:21–303:5. He further testified that: ████████████████

████████████████████████████ Gowrisankaran Dep. 304:4–8.  If his

---

[5] *See* JEFFREY M. WOOLDRIDGE, INTRODUCTORY ECONOMETRICS: A MODERN APPROACH 26 (7th ed. 2020) ("[S]imple regression is an analysis of correlation between two variables, and so one must be careful in inferring causality.").

regression analyses do not identify causal relationships—and they do not—they are not helpful to the trier of fact and should be excluded.

## LEGAL STANDARD

Federal Rule of Evidence 702 requires the proponent of expert evidence to establish that it "will help the trier of fact," "is the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(a), (c), (d). As amended in 2023, Rule 702 clarifies that "expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702 Advisory Committee's Note to 2023 Amendment. The Advisory Committee adopted the amendment to correct the misconception that "the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility." *Id.*

Consistent with Rule 702, the Supreme Court has emphasized that expert testimony must have "a valid scientific connection to the pertinent inquiry." *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 591–92 (1993). Similarly, a district court may exclude expert testimony where "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). The Fourth Circuit has repeatedly emphasized that district courts must independently perform this gatekeeping function and determine whether the expert's reasoning reliably applies the methodology to the issue before the court. *See, e.g.*, *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281–286 (4th Cir. 2021); *Nease v. Ford Motor Co.*, 848 F.3d 219, 229–231 (4th Cir. 2017).

## ARGUMENT

Dr. Gowrisankaran's regressions of ███████████████████████████ ████████ should be excluded because they ignore the fact that prices routinely are not set at the MSA level and because they cannot reveal a causal relationship. Thus, they cannot reliably address the questions they purport to answer. Dr. Gowrisankaran purports to—but does not— show a causal relationship between ██████████████████ concluding that ████████ ██████████████████████████████ But Dr. Gowrisankaran's regressions can, at most, measure correlation between ████████████████████ not causation. They are therefore inadmissible under Rule 702.

### I.    Dr. Gowrisankaran's Regressions are Unreliable Because They Fail to Establish a Causal Relationship

Dr. Gowrisankaran uses his regression analyses to conclude that ████████

████████████████████████████████████████████

████████████████████████████████████████████

But because of fundamental flaws in their design, his regressions inherently cannot support the causal conclusions he purports to draw from them. These errors render Dr. Gowrisankaran's regression analyses so flawed as to be inadmissible as expert opinion under Rule 702.

As an initial matter, Dr. Gowrisankaran's regression analyses are insufficient under Rule 702(b) because they ignore a basic feature of the relevant markets: how prices are actually set. Internet Listing Services' ("ILSs'") advertising prices typically are not set at the MSA level; instead, many ILSs have national pricing strategies and routinely enter into portfolio-wide contracts with customers. ████████████████████████████████

---

[6] *See* Gowrisankaran Report ¶¶ 215-218; Exhibit 24; ¶¶ 276-280; Exhibit 31; Appendix B.2; Exhibits 72-75; Appendix B.3; Exhibits 77-80.



Dr. Gowrisankaran's analyses, and the conclusions he draws from them, rely on the flawed assumption ████████████████████████████████ ████████████████████████████ Dr. Gowrisankaran cites no evidence and provides no explanation for this assumption, and indeed, it is unsupported. Because many properties' advertising prices are set nationally or at the portfolio level, variation in ██████████

But even aside from that flaw, Dr. Gowrisankaran's analyses are unreliable under Rule 702(c) and (d) because they suffer from an endogeneity problem that renders them inherently unable to rebut or confirm the causal propositions he advances them to test. The endogeneity problem that afflicts these analyses is especially pernicious because Dr. Gowrisankaran regresses one market equilibrium outcome ██████ on another ████████████.[7] ████████████ ██████ are an outcome of competition, not a measure of competition. Anything that affects the competitive process in a given MSA may affect both ██████████████████ Thus, even if

---

[7] A market equilibrium outcome is something that is determined through the process of competition in a market. In this case, both the ████████████████████████████████ ██████████████████████████, depend on the competitive dynamics and interactions of the market as a whole. *See* Jeffrey M. Wooldridge, Introductory Econometrics: A Modern Approach 534 (7th ed. 2020) ("[An] important form of endogeneity of explanatory variables is simultaneity. This arises when one or more of the explanatory variables is jointly determined with the dependent variable, typically through an equilibrium mechanism.").



ILSs did consistently set prices at the MSA level, Dr. Gowrisankaran's regressions ██████ ██████████ would not isolate the effects of a change in ████████████.

As a group of 26 leading industrial organization economists—including Dr. Gowrisankaran's own academic collaborators[8]—has explained, regressions of price on market share[9]—"do not predict the competitive effects of mergers and should not be used." *See* Nathan Miller, et al., *On the Misuse of Regressions of Price on the HHI in Merger Review*, 10 J. ANTITRUST ENF'T 250 (2022) (attached as Exhibit 8).[10] Since "economic theory indicates that prices and [concentration] are jointly determined in equilibrium[,] there is no causal effect of one on the other," a "fundamental empirical issue [that] has been widely understood by economists for decades." *Id.* at 254. Such regression analyses "cannot measure a causal effect" and thus "have largely been abandoned by Industrial Organization researchers." *Id.*

Thus, to the extent that Dr. Gowrisankaran's regressions purport to show whether these market outcomes ███████████████ tend to change together, they cannot indicate whether one *causes* the other to change. The inputs into Dr. Gowrisankaran's regressions—██████████████████████████████████████████—arise from the real-world interplay of multiple factors, including, for example, production costs, consumer demand, and other market forces. For this reason, it is not possible to use a simple regression to measure how one of these real-world ████████████ causes the other; they are

---

[8] *See* Gowrisankaran Dep. at 305:14-306:2 (identifying the authors as his "[doctoral] dissertation advisors," "co-author[s]," "distinguished scholars," and "good [industrial organization] economists").

[9] *See* Gowrisankaran Dep. at 315:10-15 ████████████████████████████████

[10] Miller *et al.* frame the issue in terms of regressions of price on HHI, "a commonly used measure of market shares and concentration," but go on to explain that the "underlying problem" arises because "HHI is calculated from market shares." *See* Nathan Miller, et al., *On the Misuse of Regressions of Price on the HHI in Merger Review*, 10 J. ANTITRUST ENF'T 251, 254 (2022).

jointly determined. As Miller *et al.* explain, "[t]he fundamental problem remains: there is no causal relationship to be estimated." *See* Nathan Miller, et al., *On the Misuse of Regressions of Price on the HHI in Merger Review*, 10 J. ANTITRUST ENF'T 255 (2022).

Nonetheless, Dr. Gowrisankaran relies on his regressions to support a conclusion that an increase in Redfin's ███████████████████████████████████ and that a change in Zillow's ██████████████████████████████ in any consistent way. This is exactly the type of fundamentally flawed regression analysis that diverges from the economics literature and should be excluded from trial. *See In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 07-MD-1871, 2024 WL 4582876, at *7–11 (E.D. Pa. Oct. 25, 2024) (granting motion to exclude a "fundamentally unreliable" regression analysis "unsupported by the literature"); *see also In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 25-2278, 2026 WL 2093904, at *19 (3d Cir. July 21, 2026) (describing same); *In re Elec. Books Antitrust Litig.*, No. 11 MD 2293 (DLC), 2014 WL 1282298, at *8 (S.D.N.Y. Mar. 28, 2014) (excluding expert opinion that was ungrounded in "any literature within the field of econometrics").

Both sets of Dr. Gowrisankaran's regression analyses suffer equally from this fundamental flaw. For example, with regard to Dr. Gowrisankaran's analysis of whether ████ ██████████████████████████████████████████████████████ ██████████████████ Dr. Gowrisankaran overlooked an obvious source of endogeneity: ███████████████████████████ are both affected by underlying market conditions (e.g., demand for ILSs). Assuming, ███████████████████████████████████████ MSAs with higher underlying demand for ILSs will tend to have both ██████████████ ███████████████████████████████████████████ ████████████████████████████████████ Conversely, MSAs with

9

lower demand for ILSs will tend to exhibit both ████████████████████ Thus, a regression ████████████████████████ is contaminated by the unaccounted-for underlying demand conditions that jointly determine both variables. Dr. Gowrisankaran testified that he did not ████████████████████ Gowrisankaran Dep. 315:3–4, and thus, he failed to account for it in his analyses.[11] The regressions thus cannot answer the question of whether ███████████████████████████████████████████ ████████████████████

Second, Dr. Gowrisankaran also regresses ███████████████████ ██████████████████████████████████████████████ ████████ Dr. Gowrisankaran explains the motivation for this regression as follows: ██ ██████████████████████████████████████ ████████ Gowrisankaran Report ¶ 276. Again, counterfactually assuming that ██████████ ████████████ this regression suffers from the same endogeneity problem as does the previous one: Dr. Gowrisankaran does not consider that ███████████████████ ███████████████████████ Economists have long



---

[11] Dr. Gowrisankaran's analyses are, therefore, unlike those in other cases where courts have declined to exclude regression analyses for failure to account for endogeneity. In *Miami Prods. & Chem. Co. v. Olin Corp.*, the court did not exclude the challenged regression analyses because the expert was aware of the potential for endogeneity and took steps to "confirm that there was no endogeneity problem." No. 1:19-CV-00385 EAW, 2023 WL 8946114, at *8 (W.D.N.Y. Dec. 28, 2023). Here, Dr. Gowrisankaran did not even consider—much less attempt to account for—the potential impact of underlying market conditions on ███████████████████ Similarly, unlike in *In re Air Cargo Shipping Servs. Antitrust Litig.*, here, there is no "disagreement between experts" as to whether a potential source of endogeneity is accounted for. No. 06-MD-1175 JG VVP, 2014 WL 7882100, at *21 (E.D.N.Y. Oct. 15, 2014), *report and recommendation adopted*, No. 06-MD-1775 JG VVP, 2015 WL 5093503 (E.D.N.Y. July 10, 2015). Rather, Dr. Gowrisankaran testified that he did not see any obvious source of endogeneity that might need to be accounted for.

recognized this negative relationship between price and quantity demanded: they refer to it as the "law of demand," and it is taught in all principles of economics courses. *See, e.g.,* N. GREGORY MANKIW, PRINCIPLES OF ECONOMICS 67 (8th ed. 2018) (excerpts attached as Exhibit 9) ("law of demand: the claim that, other things being equal, the quantity demanded of a good falls when the price of the good rises"). This rudimentary economic principle means that we should not be surprised to see a negative relationship between ███████████████████████████

In sum, whether ██████████ are positively, negatively, or not at all correlated with ████████████████████ depends on what factors give rise to differences in ██████████████████ Dr. Gowrisankaran's regression analyses do not properly account for all these factors, including the basic underlying factor of demand for ILS advertising. The accepted economics literature confirms that his methodology cannot reliably answer the causal questions Defendants ask it to answer: ████████████████████

███████████████████████████

## II. Because Dr. Gowrisankaran's Regression Analyses Do Not Establish a Causal Relationship, They Will Not Help the Trier of Fact to Understand the Evidence or Determine Any Fact in Issue

Rule 702(a) permits expert testimony only when the expert's specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). This requirement—often described as one of "fit"—entails a valid connection between the expert's analysis and the factual proposition for which it is offered. *Daubert*, 509 U.S. at 591. The "fit" element of 702(a) makes "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 591–592.

No regression analysis can satisfy Rule 702 when it is asked to sustain a causal relationship it cannot support. That is the problem here: Defendants offer Dr. Gowrisankaran's regressions to support the conclusion ████████████████████

11

 But, for the reasons explained above, the regressions can only establish whether ████████████████████████ ████████████████████ are correlated. They cannot establish whether █████ ████████████████████████████████████████ ████████████████████ Thus, allowing Defendants to present Dr. Gowrisankaran's flawed and unreliable analyses as evidence of a causal connection will not help the Court understand the evidence or determine any fact in issue.

## CONCLUSION

Defendants seek to use regression analyses that measure a correlation between two market outcomes as affirmative proof that ████████████████████████████████ ████████████████████ These inferences are not valid: as elementary statistics and accepted economics literature establish, a correlation between two variables does not itself establish a causal relationship. Here, Dr. Gowrisankaran has deployed an analytical method that defies accepted economic principles; he failed to design his regressions in a way that could identify a causal relationship between changes in observed competitive conditions and changes in observed ████ The Court should therefore exclude Dr. Gowrisankaran's regression analyses and the conclusions he derives from them.

12

Dated: August 7, 2026

TODD BLANCHE
Acting Attorney General

THEOPHANI K. STAMOS
First Assistant United States Attorney

/s/ *Kirstin K. O'Connor*
KIRSTIN K. O'CONNOR
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3799
Fax: (703) 299-3983
Email: kirstin.o'connor@usdoj.gov

*Local Counsel for Plaintiff Federal Trade Commission*

**FOR PLAINTIFF FEDERAL TRADE COMMISSION:**

/s/ *Allyson M. Maltas*
ALLYSON M. MALTAS
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Telephone: (202) 326-3646
Email: amaltas@ftc.gov

*Attorney for Plaintiff Federal Trade Commission*

**FOR PLAINTIFF COMMONWEALTH OF VIRGINIA:**

JAY JONES
Attorney General of Virginia

/s/ *Tyler T. Henry*
TYLER T. HENRY (Virginia Bar No. 87621)
Senior Assistant Attorney General
DAVID C. SMITH (Virginia Bar No. 80944)
Assistant Attorney General
Antitrust Unit

13

Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 692-0485 (Henry)
Telephone: (804) 692-0588 (Smith)
Email: thenry@oag.state.va.us
Email: dsmith@oag.state.va.us

*Counsel for Plaintiff Commonwealth of Virginia and Local Counsel for Plaintiffs Arizona, Connecticut, New York, and Washington*

**FOR PLAINTIFF STATE OF ARIZONA:**

KRISTIN K. MAYES
Attorney General of Arizona

SARAH PELTON (admitted *pro hac vice*)
Office of the Arizona Attorney General
Consumer Protection & Advocacy Section
2005 N. Central Avenue
Phoenix, AZ 85004
Telephone: (602) 542-3725
Email: Sarah.Pelton@azag.gov

*Counsel for Plaintiff State of Arizona*

**FOR PLAINTIFF STATE OF CONNECTICUT:**

WILLIAM TONG
Attorney General of Connecticut

NICOLE DEMERS
Deputy Associate Attorney General

JULIÁN A. QUIÑONES REYES (admitted *pro hac vice*)
FRANKLIN KANIN (admitted *pro hac vice*)
Assistant Attorney General
Office of the Connecticut Attorney General
165 Capitol Avenue
Hartford, CT 06106
Telephone: (860) 808-5030
Email: Julian.Quinones@ct.gov
Email: Franklin.Kanin@ct.gov

14

*Counsel for Plaintiff State of Connecticut*

**FOR PLAINTIFF STATE OF NEW YORK:**

LETITIA JAMES
Attorney General of New York

ELINOR R. HOFFMANN (admitted *pro hac vice*)
Chief, Antitrust Bureau
AMY MCFARLANE (admitted *pro hac vice*)
Deputy Bureau Chief, Antitrust Bureau
MICHAEL SCHWARTZ (admitted *pro hac vice*)
Senior Enforcement Counsel
MARIA LUISA DI LAURO (admitted *pro hac vice*)
Assistant Attorney General

New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8269
Email: Elinor.Hoffmann@ag.ny.gov

*Counsel for Plaintiff State of New York*

**FOR PLAINTIFF STATE OF WASHINGTON:**

NICHOLAS W. BROWN
Attorney General of Washington

AMY N. L. HANSON (admitted *pro hac vice*)
Senior Managing Assistant Attorney General
TYLER W. ARNOLD (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Division

Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
Telephone: (206) 464-5419 (Hanson)
Telephone: (206) 464-7030 (Arnold)
Email: amy.hanson@atg.wa.gov
Email: tyler.arnold@atg.wa.gov

*Counsel for Plaintiff State of Washington*

15

**Certificate of Service**

I, Kirstin K. O'Connor, certify that, on this date, the foregoing document was filed electronically via the Court's CM/ECF system, which will send notice of the filing to all counsel of record, and parties may access the filing through the Court's system.

Dated: August 7, 2026                         /s/ *Kirstin K. O'Connor*

KIRSTIN K. O'CONNOR
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3799
Fax: (703) 299-3983
Email: kirstin.o'connor@usdoj.gov

*Local Counsel for Plaintiff Federal Trade Commission*

16